**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIO MARTINEZ SANCHEZ, | Civil Action No. 26-2147 (ZNQ) |
| Petitioner, | |
| v. | **OPINION** |
| KRISTI NOEM, *et al.*, | |
| Respondents. | |

**QURAISHI, District Judge**

This matter comes before the Court on Petitioner's habeas petition (ECF No. 1) and motion seeking a temporary restraining order (ECF No. 2) challenging his ongoing immigration detention. Following an order to answer, the Government filed responses to the petition (ECF Nos. 7, 9), to which Petitioner did not reply. For the following reasons, Petitioner's habeas petition shall be granted, and Petitioner shall be accorded a bond hearing before an immigration judge at which the Government bears the burden of demonstrating by clear and convincing evidence that Petitioner poses either a flight risk or danger to the community. Petitioner's motion seeking a temporary restraining order shall be denied without prejudice as moot in light of the granting of his petition.

I.     **BACKGROUND**

Petitioner is a native and citizen of Venezuela who crossed the southern border of the United States without admission or inspection in November 2022. (ECF No. 7-1 at 1.) Border patrol agents encountered Petitioner shortly after his border crossing, took him into custody, and processed him for expedited removal pursuant to 8 U.S.C. § 1225(b)(1). (*Id.* at 2.) Because

Petitioner expressed fear of return to his home country, he was referred for further proceedings (*see id.* at 2-3), and was paroled from detention on November 12, 2022, pursuant to 8 U.S.C. § 1182(d)(5)(A).  (ECF No. 9-1.)  Petitioner remained at liberty in the United States until February 11, 2026, when he was taken back into custody pursuant to 8 U.S.C. § 1225(b)(1).  (ECF No. 7-1 at 2-3.)  Petitioner's removal proceedings have been ongoing since his most recent arrest, and he has remained in detention without bond since February 11, 2026.  (ECF No. 7 at 2.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

## III.    DISCUSSION

In his habeas petition, Petitioner contends that his continued detention under 8 U.S.C. § 1225(b) is unlawful.  The Government instead argues that he remains subject to § 1225(b)(1) as he was taken into custody shortly after crossing into the United States and was subsequently granted temporary humanitarian parole.  As this Court has explained,

> Aliens who attempt to enter the United States illegally and who are detained shortly after making an unlawful crossing of the border are "treated as an applicant for admission" and are subject to the terms of § 1225(b)(1). *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020).  As the Third Circuit has explained, "[u]nder 8 U.S.C. § 1225(b)(1) and its companion regulations, two classes of aliens are subject to [detention and] expedited removal [proceedings under § 1225(b)(1)] if an immigration officer determines they are

> inadmissible due to misrepresentation or lack of immigration papers: (1) aliens 'arriving in the United States,' and (2) aliens 'encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border." *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). Aliens subject to this provision will generally be issued an expedited removal order unless they indicate to immigration officers that they have a credible fear of persecution should they be deported, in which case they are referred for further proceedings regarding their expressed fear. *Id.* Aliens who are taken into custody under § 1225(b)(1) are subject to mandatory detention throughout their removal and credible fear proceedings, though the Government may in its discretion temporarily parole such aliens into the United States "for urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Detention under the statute remains mandatory until the conclusion of the alien's removal proceedings, after which an alien would have a final order of removal, and detention under § 1225(b)(1) ends. *Id.* at 300-03.

*Arcos Tasigchana v. Soto*, No. 25-18252, 2026 WL 266170, at *1 (D.N.J. Feb. 2, 2026).

Aliens subject to expedited removal under 8 U.S.C. § 1225(b)(1) are therefore subject to mandatory detention throughout their removal proceedings, and are generally not entitled to release unless the Government chooses to grant them humanitarian parole. *Id.* The parole statute, 8 U.S.C. § 1182(d)(5)(A), provides that an alien who is paroled "shall forthwith return or be returned to the custody from which he was paroled" and continue to be detained pursuant to the original detention statute. As Petitioner was initially taken into custody shortly after crossing the border and was later paroled, his return to custody following the Government's termination of his parole is governed by § 1225(b)(1), and he remains subject to the mandatory detention requirements of that statute. *See Arcos Tasigchana*, 2026 WL 266170 at *1-2; *see also Jennings*, 583 U.S. at 297 (until the relevant proceedings under § 1225(b) end "nothing in the statutory text imposes any limit on the length of detention"). Thus, under the text of the relevant statutes, Petitioner is subject to mandatory detention and is not entitled to release or a bond hearing.

Although Petitioner is subject to mandatory detention under § 1225(b)(1), Petitioner also argues in his petition that his continued detention without bond violates his Due Process rights. Although aliens subject to detention under § 1225(b)(1) "have only those rights regarding admission that Congress has provided by statute" and the Due Process clause does not provide for detailed review of removal proceedings under the statute, *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020), it does not follow that the Due Process clause is silent as to the rights of aliens to liberty following prolonged detention, especially where that alien was previously permitted to remain at liberty within the United States on parole for a considerable period of time.   As this Court has recently explained,

> Courts in this District have long presumed that aliens subject to prolonged detention under the statute have a liberty interest in release from detention which requires a bond hearing. *See, e.g., Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442-43 (D.N.J. 2019). In so doing, courts have analogized mandatory detention under 1225(b) to the similar mandatory detention required for aliens who have qualifying criminal convictions under 8 U.S.C. § 1226(c). *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-13 (3d Cir. 2020). In *German Santos*, the Court of Appeals held that where an alien is subject to prolonged detention under the statute, that detention will eventually reach a point where it essentially becomes arbitrary in light of the purposes and presumptions underlying the statute. *Id.* In the context of those with criminal convictions subject to detention under § 1226(c), detention "becomes more and more suspect after five months and in most cases will become "unreasonable sometime between six months and one year." *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433-34 (3d Cir. 2026). Once the length of detention becomes suspect, a reviewing court must consider the length of detention and likelihood of lengthy continued condition, the similarity of Petitioner's conditions of confinement to criminal detention, and the Petitioner's responsibility for the length of his own detention in determining whether detention has become arbitrary in light of the purposes of § 1226(c). *German Santos*, 965 F.3d at 211. Where those factors indicate that detention has become arbitrary, the alien is entitled to a bond hearing at which the Government bears the burden of proving that further detention is

necessary by showing that the Petitioner is a danger or flight risk by clear and convincing evidence. *Id.* at 213-14.

This Court agrees that, at a certain point, detention under § 1225(b)(1) will become so prolonged that it becomes arbitrary and Due Process will require a bond hearing. *Tuser E.*, 370 F. Supp. 3d 442-43. The question that remains, then, is at what point detention will become suspect. Although in the § 1226(c) context, detention will become arbitrary only after cresting five months, that length of time is based on the concept that the court can essentially presume that an alien convicted of qualifying crimes is a flight risk or danger to the community for the length of time it ordinarily would take to complete removal proceedings. *German Santos*, 965 F.3d at 209-10. The alien's criminal history is in that context providing the basis for the presumption which places a limits on his liberty interests in the § 1226(c) context.

Aliens detained under § 1225(b)(1) are not held based on a criminal history[.] The statute instead relies chiefly on the presumption that an alien with no clear right to admission into the United States is a flight risk and may therefore be detained for the relatively limited period of time required for him to receive an *expedited* order of removal. *See, e.g.,* 8 U.S.C. § 1225(b)(1)(A). Such proceedings are clearly intended to be considerably shorter than the general removal proceedings to which criminal aliens already in the United States are subject under § 1226(c), and the presumptive basis for mandatory detention under the statute is considerably weaker than that applicable to criminal aliens as it is based solely on the lack of legal status rather than past misdeeds. It therefore follows that detention under § 1225(b)(1) should become suspect far sooner than detention under § 1226(c).

*Martinez Olivo v. Soto*, No. 26-2122, 2026 WL 1265500, at *2-3 (D.N.J. May 8, 2026).

In this matter, Petitioner was on parole without apparent issue for several years before he was taken back into custody in February 2026. Since his arrest, Petitioner has remained in detention for several months in a jail-like facility, and, as his removal proceedings are ongoing, that detention is likely to continue for a considerable period of time. Nothing in the record suggests Petitioner is responsible for any unreasonable delay in his removal proceedings. In light of these facts, this Court finds that Petitioner's detention without bond has become sufficiently prolonged

that the presumption that his lack of status renders him a flight risk is no longer sufficient to satisfy Due Process, and continued detention without a bond hearing has become so arbitrary as to deny Petitioner Due Process.  Petitioner's habeas petition shall therefore be granted, and he shall be provided a bond hearing at which the Government bears the burden of proving that he is a flight risk or danger to the community by clear and convincing evidence within ten days.[1]  Because the Court will grant Petitioner's habeas petition, Petitioner's motion seeking a temporary restraining order (ECF No. 2) must be denied without prejudice as moot.

IV.   **CONCLUSION**

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **GRANTED**, and Petitioner shall be provided a bond hearing at which the Government bears the burden of demonstrating danger or flight risk by clear and convincing evidence within ten days.  Petitioner's motion seeking a temporary restraining order (ECF No. 2) is **DENIED WITHOUT PREJUDICE** as moot.  An appropriate order follows.

Date: June 10, 2026

          s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[1] Should Petitioner be granted release on bond, such a release shall not be construed as an admission into the United States for immigration purposes, and such release provides no legal status to remain in the United States which Petitioner did not already possess.